UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SUN STATE OIL, INC.                                                            PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:18-CV-619-DPJ-FKB

SUMAN PAHWA D/B/A                                       DEFENDANT
K&K OIL

ORDER

Defendant Suman Pahwa d/b/a K&K Oil ("Pahwa") asks the Court to dismiss the Complaint against him under Federal Rule of Civil Procedure 12(b)(6). Mot. [3]. For the reasons that follow, Pahwa's Motion to Dismiss is denied.

I.      Facts and Procedural History

Plaintiff Sun State Oil, Inc. ("Sun State") is a supplier of Citgo-branded gasoline. In July 2012, it entered into a contract with non-party Harvest Enterprise, Inc., d/b/a Harvest Station ("Harvest") under which Harvest agreed to purchase fuel from Sun State to sell at Harvest's service station on Clinton Boulevard in Jackson, Mississippi. The contract, which had a 10-year term, specified that Sun State would be the sole supplier of fuel to Harvest.

Sun State says Pahwa knew that Harvest was required to purchase all its fuel from Sun State but Pahwa nevertheless "provided fuel to Harvest . . . on multiple occasions during the time period from 2013 to 2016." Compl. [1] ¶ 10. And it asserts that Pahwa "provided fuel to other locations in Jackson under contract with Sun State." *Id.* ¶ 12. It says a Sun State representative confronted Pahwa about the issue in the summer of 2016, and Pahwa "responded by threatening to kill or do harm to" the Sun State representative. *Id.* ¶ 15.

Sun State first sued Pahwa in this Court on October 20, 2017. *See Sun State Oil, Inc. v. Pahwa*, No. 3:17-CV-836-LG-LRA ("*Sun State I*"). That lawsuit was dismissed on May 9,

2018, for failure to serve process. Sun State then filed this lawsuit on September 6, 2018. It asserts two claims for tortious interference with a contract/business relations: one based on selling fuel to Harvest and the other based on selling fuel to Sun State's other purchasers in Mississippi. Pahwa moved to dismiss, asserting that Sun State's claims are time-barred and otherwise fail to state a claim; his motion has been fully briefed.

II. Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). The "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

Pahwa bases his motion, in part, on an affirmative defense—the statute of limitations. "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under

2

Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994); *see also Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper.").

Finally, in considering a motion under Rule 12(b)(6), the Court "must [generally] limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). An exception to this rule exists for "matters of public record" of which "the court may take judicial notice." *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012). In this case, Pahwa has directed the Court to Sun State's filings in *Sun State I*. Documents filed in another lawsuit qualify and may be considered without converting Pahwa's motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

III. Analysis

    A. Statute of Limitations

Pahwa initially argued that Sun State's tortious-interference claims are subject to the one-year statute of limitations applicable to intentional torts. *See* Miss. Code Ann. § 15-1-35. But in reply, he acknowledged that Mississippi caselaw does not support such an argument. Def.'s Reply [11] at 1; *see Nichols v. Tri-State Brick & Tile Co., Inc.*, 608 So. 2d 324, 333 (Miss. 1992) (concluding malicious-interference-with-business-relations claim not covered by one-year intentional-tort limitations period).

Instead, Sun State's claims are subject to the three-year statute of limitations found in Mississippi Code section 15-1-49. *See Wertz v. Ingalls Shipbuilding, Inc.*, 790 So. 2d 841, 845 (Miss. Ct. App. 2000) (explaining that intentional-interference-with-contract claim is subject to three-year limitations period of section 15-1-49); *Hooks v. Sears, Roebuck & Co.*, No. 1:07-CV-634-LG, 2007 WL 2746786, at *2 (S.D. Miss. Sept. 19, 2007) (following *Wertz*). So Pahwa now asserts that Sun State's claims against him accrued no later than May 2015, making Sun State's September 6, 2018 Complaint untimely.

Sun State says it has alleged a continuing tort under Mississippi law, with wrongful conduct by Pahwa continuing through 2016.

> A "continuing tort" is one inflicted over a period of time; it involves wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. *A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.*

*Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993) (emphasis in original) (quoting C.J.S. Limitations of Actions § 177). In cases involving a continuing tort, "the statute of limitations does not begin to run until the date of the last injury." *Pierce v. Cook*, 992 So. 2d 612, 618 (Miss. 2008).

For his part, Pahwa does not directly address the applicability of the continuing-tort doctrine, instead arguing that the allegation that his tortious conduct continued into 2016 is not plausible in light of documents Sun State filed in *Sun State I* and the terms of a default judgment Sun State obtained against Harvest. Specifically, Pahwa notes that, in *Sun State I*, Sun State attached as an exhibit to the complaint receipts from Pahwa's deliveries to Harvest from November 17, 2013, through May 20, 2015. *See Sun State I*, Compl. Ex. B [1-2]. Pahwa also points out that, in the default judgment Sun State obtained against Harvest on February 2, 2016, it was awarded lost profits through October 31, 2015. Default J. [1-3] at 2.

4

The Court finds these documents do not negate the plausible inference that Pahwa's wrongdoing continued into 2016. Starting with the delivery receipts, there is nothing indicating that those receipts covered *every* delivery Pahwa made to Harvest or other Jackson-area service stations with Sun State contracts. Instead, the complaint in *Sun State I* indicated that those were receipts from a single fuel-products carrier and that Sun State believed Pahwa "used other carriers to deliver fuel to various locations in Jackson under contract with Sun State." *Sun State I*, Compl. [1] ¶ 13. As for the default judgment against Harvest, that document does not purport to capture *Pahwa*'s wrongdoing; it establishes the extent of Harvest's liability to Sun State. But even if the timeframe of Harvest's liability sheds some light on when Pahwa ceased interfering with Sun State's contracts and business relationships, Sun State was awarded over $26,000 in lost profits through October 31, 2015, and over $117,000 in lost profits from November 1, 2015, forward. Default J. [1-3] at 2. So even ignoring the latter category of damages, if October 31, 2015, was the last date Pahwa engaged in tortious conduct, that date is less than three years before Sun State filed this lawsuit.

It should be noted that Rule 12(b)(6) is not the vehicle for determining factual disputes. Pahwa may ultimately show that the claim is time barred. But for now, the facts of the Complaint are presumed true, and the documents Pahwa relies upon do not negate the plausible inference that its tortious conduct continued into 2016.[1]

---

[1] Given this holding, the Court need not reach the issue of the tolling effect of the filing of *Sun State I*.

B.     Failure to State a Claim

Sun State alleges claims for tortious interference with a contract and with business relations. To establish a claim for tortious interference with business relations, a plaintiff must show:

(1) The acts were intentional and willful;

(2) The acts were calculated to cause damage to the plaintiff[] in [its] lawful business;

(3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); [and]

(4) Actual damage and loss resulted.

*MBF Corp. v. Century Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (quoting *Nichols v. Tri-State Brick & Tile*, 608 So. 2d 324, 328 (Miss. 1992)). In addition to establishing those four elements, a plaintiff in a tortious-interference-with-contract claim "must prove that an enforceable obligation existed between the plaintiff and another party" and "that the contract would have been performed but for the alleged interference." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998).

Pahwa says Sun State's allegations are deficient with respect to the elements of intent and causation and that its claim based on Sun State customers other than Heritage is too vague to satisfy its burden at the pleading stage. Starting with intent, under Federal Rule of Civil Procedure 9(b), "[m]alice, intent, knowledge, and other conditions of a [party's] mind may be alleged generally." And the intent component of a tortious-interference claim "may be inferred." *AmSouth Bank v. Gupta*, 838 So. 2d 205, 214 (Miss. 2002). Here, Sun State plausibly averred that Pahwa knew about Sun State's exclusive contract yet sold unbranded fuel with the intent that Harvest would sell it as Citgo-branded fuel. Compl. [1] ¶¶ 9, 17. By doing so, Pahwa

6

induced Harvest to pay it what Harvest should have paid Sun State. These facts plausibly allege intent, and Pahwa has offered no legal authority suggesting otherwise.

Turning to causation, Pahwa asserts that "[t]o prevail [on its claims, Sun State] must prove that [Pahwa] was the but for causation [sic] of the non-performance under the contract." Def.'s Mem. [4] at 5 (citing *Par Indus., Inc.*, 708 So. 2d at 48). Pahwa says that Sun State has alleged that Harvest purchased 42,000 gallons of gas from Pahwa between 2013 and 2016, which is less than "the required 55,000 gallons [Harvest was] to purchase[] from [Sun State] *per month* under the[ir] contract" such that Pahwa could not have been "the 'but for' cause of a contract for 6.6 million gallons [of fuel] to fail." Def.'s Mem. [4] at 6. But under the contract between Harvest and Sun State, Harvest's purchase of *any* fuel from anyone other than Sun State amounted to a breach of contract, so Sun State has pleaded that but for Pahwa's interference, Harvest would have performed its contract with Sun State. Again, Pahwa offered no legal authority to support its theory that the amount of interference was de minimis.[2]

Finally, in its reply, Pahwa says that the claim regarding non-Harvest fuel purchasers "is so vague that it appears to be nothing more than a thinly-veiled attempt to go fishing." Def.'s Reply [11] at 3. While it is true Sun State does not identify by name any of its other customers to which Pahwa sold fuel, Sun State alleges, upon information and belief, that Pahwa "provided fuel to other locations in Jackson under contract with Sun State," causing damage to Sun State. Compl. [1] ¶ 12; *see id.* ¶¶ 29–33. At this stage, Sun State has pleaded "'enough fact to raise a

---

[2] Even if Sun State's allegations on the tortious-interference-with-contract claim were deficient, Pahwa has not meaningfully challenged the allegations as to the tortious-interference-with-business-relations claim.

reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."
*In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (citing *Twombly*, 550 U.S. at 556).[3]

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendant's Motion to Dismiss [3] is denied. Pursuant to the Text-Only Order entered on October 25, 2018, the parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball within 7 days of the entry of this order to reset the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 8th day of January, 2019.

s/ *Daniel P. Jordan III*<br>
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] While this argument presents a closer call, if the Court had concluded that Sun State's allegations failed to state a claim, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted). "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* Here, Sun State would have been given that opportunity.